**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

Gerald Barry,

      Plaintiff,

      v.

City of Chicago,

      Defendant.

Case No. 18 C 2183
Case No. 19 C 2275

Judge John Robert Blakey

**MEMORANDUM OPINION AND ORDER**

In this age discrimination case, the Court previously dismissed Plaintiff's complaint as time barred because he failed to file an EEOC charge within 300 days of the alleged unlawful employment practice. *See* [26]. Plaintiff amended his complaint, and Defendant once again moved to dismiss. For the reasons explained below, the new allegations cannot save Plaintiff's claim and therefore this Court grants the motion [41].

I.    Background & Procedural History

On March 26, 2018, Plaintiff Gerald Barry, proceeding *pro se*, sued his former employer, the City of Chicago, alleging age discrimination. *See* [1]. The City moved to dismiss the case, arguing that the applicable statute of limitations barred Plaintiff's claim. *See* [13]. Consistent with its normal practice, this Court gave Plaintiff an immediate opportunity to amend his complaint to address the deficiencies raised by the City, and Plaintiff amended. *See* [19]. The City again moved to dismiss,

1

[20], and the parties briefed the motion. *See* [23], [24]. The Court granted the City's motion and dismissed Plaintiff's amended complaint on August 7, 2018. *See* [26]. In doing so, the Court noted that the applicable statute of limitations required Plaintiff to file an EEOC charge within 300 days of the alleged unlawful discriminatory act or practice and that failing to file a charge within that time period renders the complaint untimely. [26] at 4 (citing 29 U.S.C. § 626(d); *Casteel v. Exec. Bd. of Local 703 of Int'l Bhd. of Teamsters*, 272 F.3d 463, 466 (7th Cir. 2001); *Filipovic v. K & R Express Sys., Inc*, 176 F.3d 390, 396 (7th Cir. 1999)). Because the alleged misconduct—refusing to recognize Plaintiff's status as a cross-trained firefighter/paramedic in January 2015; reassigning him to a different position in February 2016; and forcing him to retire in April 2016—all occurred years before he filed his EEOC charge on December 14, 2017, the Court held that Plaintiff filed his charge too late and dismissed his complaint. [26] at 4–6.

After dismissing Plaintiff's complaint, the Court gave him time to hire an attorney and seek assistance from the Court's Pro Se Assistance Program, the Hibbler Help Desk, and also granted him leave to file an amended complaint if he believed he could do so consistent with this Court's opinion and his obligations under Federal Rule of Civil Procedure 11. Thereafter, Plaintiff filed further amendments on January 4, 2019 [33] and May 28, 2019 [39]. The most recent amended complaint—the fourth amendment and the operative complaint—alleges that Plaintiff filed an EEOC charge on December 3, 2018 and received a right-to-sue letter on January 3, 2019. [39] at 2–3. Plaintiff did not attach the charge to his complaint, but he did attach the charge

to a later filing, *see* [53]; it alleges the same misconduct as the prior charge, but also alleges for the first time that the City "ended [his] retirement healthcare benefits due to [his] being forcibly retired for discriminatory reasons." [53] at 2.

Consistent with this new allegation, the operative complaint alleges that, on April 1, 2018, Plaintiff "lost the health care coverage that he had from the City of Chicago, resulting in a significant diminishment of his benefits." [39] at 5. He alleges that the loss of health care benefits is "consequential to the misapplication of the Mandatory Retirement Ordinance" and that the City's decision to take away his health care coverage violates his rights under the "Lilly Ledbetter amendment to the Equal Pay Act." *Id.* In addition, he alleges that the City

> has shown a continual effort of discrimination, harassment, and retaliation towards the plaintiff since January 2015 when the city denied plaintiff recognition as a cross-trained Firefighter/Paramedic, and ongoing to the present by denying the plaintiff the opportunity to serve on his assigned position in the CFD on Ambulance 46, violating the 5 year agreement to recognize plaintiff's status, said agreement expiring in 2020.

*Id.* As he did in his prior complaint, Plaintiff alleges that the City "attempted to deny [him] status as a medic in 2015"; detailed him "to other assignments for a two month period nonconsensually in violation of the [Collective Bargaining Agreement between Firefighter's Union Local 2 and the City of Chicago]"; and retired Plaintiff "in a misapplication of the City of Chicago mandatory retirement ordinance for Firefighter and Police personnel on April 16, 2016." *Id.* at 5–6.

Between his two most recent amended complaints, Plaintiff, on April 3, 2019, also filed another lawsuit, Case No. 19 C 2275; the complaint in that case [1] includes

the exact same allegations as the most recent complaint filed in this case [39] on May 28, 2019. As a result, the City moved to consolidate the two cases and to have the second case reassigned to this Court, *see* [44], and the Court granted the motion, *see* [49].

Thereafter, the City moved to dismiss both operative complaints (docket entry [39] in this case and docket entry [1] in case No. 19 C 2275), arguing that the new allegations fail to save Plaintiff's claim. *See* [41]. For the reasons explained more fully below, this Court agrees.

II.    Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted"; such motions do not generally reach questions of fact. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1080 (7th Cir. 1997); *Int'l Mktg., Ltd. v. Archer-Daniels-Midland Co., Inc.,* 192 F.3d 724, 729–30 (7th Cir. 1999). To survive a motion to dismiss, a complaint must allege "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly,* 550 U.S. at 556). In evaluating a complaint, this Court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded allegations as true; the Court need not, however, accept legal conclusions or

conclusory allegations. *Id.*; *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

III.    Discussion & Analysis

This Court previously determined that the alleged discriminatory conduct included in Plaintiff's December 14, 2017 EEOC charge all occurred more than 300 days prior to the filing date. *See* [26]. Plaintiff challenges the same conduct in his December 3, 2018 charge, and any claim as to that conduct would be time barred for the reasons explained in the Court's prior dismissal order (incorporated here by reference).

The question raised in the present motion is whether Plaintiff's new allegations—the allegations relating to the loss of health care—give rise to a timely, viable claim.

Initially, Plaintiff alleges that he lost his health care coverage on April 1, 2018 and that the loss of health care was "consequential to the misapplication of the Mandatory Retirement Ordinance." [39] at 5. He filed his new EEOC charge on December 3, 2018. *Id.* Thus, Plaintiff unquestionably filed the new charge within 300 days of the challenged conduct and a claim relating to the loss of health care would be timely. This claim cannot survive, however, because his allegations fail to state a federal cause of action. Even after four amendments, Plaintiff's complaint still falls short of stating a claim under the ADEA or the Lilly Ledbetter Equal Pay Act of 2009.

Lilly Ledbetter, a female employee at Goodyear Tire & Rubber Company, sued her employer alleging sex discrimination in violation of Title VII; she claimed that she received negative performance evaluations because of her gender and those evaluations affected her pay. *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618 (2007). After the lower courts rejected her claim as time barred, she argued before the United States Supreme Court that each paycheck (reflecting pay at a rate less than her similarly situated male co-workers as a result of negative, discriminatory evaluations) constituted a separate and discrete wrong that triggered a new limitations period. The Supreme Court rejected the argument, 550 U.S. at 621, but then Congress effectively overruled the Court's decision when it passed the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3)(A), which provides that an "unlawful employment practices" occurs when:

> (1) a discriminatory compensation decision or other practice is adopted;
> (2) an individual becomes subject to a discriminatory compensation decision or other practice; and (3) **an individual is affected by application of a discriminatory compensation decision or other practice, including each time wages, benefits, or other compensation is paid, resulting in whole or in part from such a decision or other practice**.

*Groesch v. City of Springfield Ill.*, 635 F.3d 1020, 1024–25 (7th Cir. 2011) (quoting 42 U.S.C. § 2000e–5(e)(3)(A)) (emphasis added). Thus, as Plaintiff correctly notes, the Act provides that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by the discriminatory decision.

But simply alleging a reduction in benefits or pay is not enough to trigger a reset under the Act. Plaintiff still has to allege that the paycheck reflects a

discriminatory compensation decision or discriminatory practice. The ADEA makes it unlawful for an employer to take adverse action against an employee who is forty years or older "because of such individual's age." 29 U.S.C. §§ 623(a)(1), 631(a). Thus, to state a claim under the ADEA, Plaintiff must at least allege that age was the reason for the challenged adverse employment action. *E.g., Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). And such an allegation is wholly absent here. Plaintiff checked the box marked "age" on the Court's form employment discrimination complaint, *see* [39] at 3; Case No. 19 C 2275, [1] at 3, but he fails to allege any facts to support an age discrimination claim. He alleges that the loss of health care coverage "was a violation of his rights under the Lilly Ledbetter amendment to the Equal Pay Act," [39] at 5; [1] at 5, but he does not say why or how. He alleges that the loss of health care: resulted "from the discriminatory mandatory retirement on April 16, 2016"; was "consequential to the misapplication of the Mandatory Retirement Ordinance"; and was part of a "continual effort of discrimination." [39] at 5; [1] at 5. But he never explains why the forced retirement constituted a discriminatory action or how the City misapplied the MRO. His allegations constitute legal conclusions, which this Court need not accept; to state a claim Plaintiff must allege facts from which this Court could infer age discrimination. And, even liberally construed, his complaints lack any allegations to support an inference that the City discriminated against Plaintiff because of his age (or, for that matter, because of any other descriptor protected by federal law). In short, Plaintiff has not alleged any facts

showing that his age constituted a motivating factor in the City's decision to change his health care, or even in the initial decision to subject him to mandatory retirement.

Nor does Plaintiff allege that the City handled his health care coverage in a manner that differed discriminatorily from the manner in which it handled the health benefits of other retired employees. Plaintiff does not allege that he was treated differently from other employees who were subject to the MRO. Instead, Plaintiff alleges that the City misapplied its mandatory retirement policy, forcing him to retire in April 2016 (in violation of both the collective bargaining agreement between the City and the Firefighters' Union and an August 2015 settlement agreement he and the City executed to resolve a grievance he filed), and causing him to lose health care coverage in 2018. [39] at 5; Case No. 19 C2275, [1] at 5. Significantly, he does not allege that the City misapplied the MRO or changed his benefits because of his age.

Plaintiff's pleadings demonstrate that age was not a factor in the decision to cut Plaintiff's health care coverage, as other workers in the same protected age category received the benefits he claims the City denied him.[1] He alleges that the City allowed individuals who were not subject to mandatory retirement to work and receive benefits, while the City did not allow him to do either of these things. But, absent some claim that the loss of health care coverage had something to do with age (or sex, or religion, or national origin, or some other protected class category), such

---

[1] Indeed, he concedes that workers, like him, in the protected age category received the benefits he alleges the City cut from his package. *See* [51] at 4 ("Plaintiff contends that the Ledbetter FPA applies to plaintiff's loss of healthcare, loss of pay and benefits from 5 year contract, and additionally, the loss of equitable acrual of pension benefits . . . vis a vis other similarly situated members who being over age 63 and still on the CFD payroll are exempt from the mandatory retirement requirement which is duty specific to firefighting duties as is plaintiff.").

allegations do not amount to an "unlawful employment practice" and do not implicate the ADEA or the Lilly Ledbetter Fair Pay Act.

At bottom, Plaintiff claims that the City applied its Mandatory Retirement Ordinance in his case when it should not have, and that, in doing so, the City violated the collective bargaining agreement between Firefighter's Union Local 2 and the City, and also violated a settlement agreement he and the City executed in August of 2015. Plaintiff's allegations may support a claim for breach of contract or a claim seeking to enforce the arbitration award. But they do not support a claim for age discrimination.

IV.    Conclusion

For the reasons explained above, this Court finds that Plaintiff's amended complaint in this case and his original complaint in Case No. 19 C 2275 fail to state a claim. The Court therefore grants Defendant's motion to dismiss [41] and dismisses both cases.

Dated:  March 25, 2020

Entered:

John Robert Blakey
United States District Judge